[Cite as *State v. Latham*, 2026-Ohio-6.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-9 |
| Appellee | : | |
| | : | Trial Court Case No. 2024 CR 151 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| ANDREW SCOTT LATHAM | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on January 2, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

EPLEY, P.J., and HUFFMAN, J., concur.

LUCAS W. WILDER, Attorney for Appellant
SAMANTHA B. WHETHERHOLT, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Defendant-Appellant, Andrew Scott Latham, appeals from the sentence imposed following his guilty plea to one count of illegal conveyance of weapons onto the grounds of a specified governmental facility and one count of obstructing official business. According to Latham, the trial court erred by failing to follow the parties' jointly recommended sentence of a total of 12 months. For the reasons discussed below, we find the assignment of error without merit and affirm the judgment.

## I. Facts and Course of Proceedings

{¶ 2} On November 4, 2024, an indictment was filed in the trial court charging Latham with one count of illegal conveyance of weapons onto the grounds of a specified governmental facility, one count of assault, and two counts of obstructing official business. The first offense involved Latham's alleged conveyance or attempt to convey a live round of .32 ammunition into the Tri-County Jail on October 11, 2024. The remaining offenses were alleged to have occurred in the jail on October 15, 2024. After Latham pled not guilty at the February 6, 2025 arraignment, the court appointed counsel for him. When the parties appeared in court on February 24, 2025, they said they had resolved the case. Transcript of CSC, Plea, & Sentencing Hearing ("Tr."), 2.

{¶ 3} The agreement was as follows: Latham would plead guilty to Counts One and Three (illegal conveyance, a third-degree felony, and obstruction, a fifth-degree felony); the State would ask the court to dismiss Counts Two and Four; both parties would waive a PSI

report; and if Latham had no further criminal history other than what was known and disclosed in either sides' discovery packet, the parties would jointly agree to a 12-month prison sentence to be served concurrently with Latham's current prison term. Other parts of the agreement dealt with actions that would cause the State not to be bound, the forfeiture of certain property, and Latham's payment of court costs and court-appointed attorney fees. The State noted the victim had not objected to the plea deal. In addition, Latham stated that he understood what the lawyers had said about the plea agreement and still wished to enter a guilty plea. Tr. 4-6.

{¶ 4} During the plea hearing, the trial court conducted a full Crim.R. 11(C) colloquy. Among other things, this included statements about the maximum prison terms and fines for both offenses, complete information about consecutive sentences, a warning that the court did not have to follow the joint sentencing recommendation, notification of post-release control conditions, and other matters like the constitutional rights Latham was waiving. Tr. 10-18. After being advised of his rights, Latham signed the written plea forms and pled guilty. The court then accepted the guilty plea, found Latham guilty of the charges, and immediately proceeded to sentencing. Tr. 20-21.

{¶ 5} Instead of imposing the jointly-agreed 12-month concurrent sentence, the court rejected it and sentenced Latham to nine months on Count One and 12 months on Count Three, with the sentences being imposed consecutive to each other and concurrent with the 14-month sentence Latham was then serving for a conviction in Scioto County. Tr. 40-41. This resulted in a prison term of 21 months rather than 12 months, which would, again, be served concurrently with the other prison term. Latham timely appealed from the sentence.

3

## II. Validity of the Sentence

**{¶ 6}** Latham's sole assignment of error states:

> The Trial Court Should Have Followed the Parties' Jointly Recommended Sentence of 12 Months.

**{¶ 7}** Under this assignment of error, Latham argues the sentence was contrary to law because the trial court relied heavily on two points: (1) Latham was on supervision when the offenses were committed; and (2) an officer suffered a broken leg during an interaction with Latham, even though Latham did not cause the injury. According to Latham, the trial court should have imposed the agreed-upon 12-month sentence. Before we discuss these arguments, we will outline general standards that apply to sentencing.

### A. Sentencing Standards

**{¶ 8}** In considering sentences, appellate courts are required to "'review the record, including the findings underlying the sentence or modification given by the sentencing court.'" *State v. Marcum*, 2016-Ohio-1002, ¶ 9, quoting R.C. 2953.08(G)(2). Under this section of the statute, an appellate court may increase, reduce, or modify sentences, or vacate them and remand for sentencing, only if the court "'clearly and convincingly'" finds that either (1) the record fails to support certain specified findings or (2) the sentence is contrary to law. *State v. Worthen*, 2021-Ohio-2788, ¶ 13 (2d Dist.). The Supreme Court of Ohio has stressed that "we may not independently 'weigh the evidence in the record and substitute [our] judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.'" *State v. Bartley*, 2023-Ohio-2325, ¶ 9 (2d Dist.), quoting *State v. Jones*, 2020-Ohio-6729, ¶ 42.

**{¶ 9}** "Clear and convincing evidence" means "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty

as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 10} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, ¶ 45 (2d Dist.), citing *State v. Foster*, 2006-Ohio-856, paragraph seven of the syllabus.

### B. Discussion

{¶ 11} As noted, R.C. 2953.08(G)(2) requires courts to make findings under certain statutes. The one that applies here is R.C. 2929.14(C)(4), which outlines findings that must be made before imposing consecutive sentences. In this regard, the trial court must "'make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry.'" *State v. Coffee*, 2023-Ohio-474, ¶ 14 (2d Dist.), quoting *State v. Bonnell*, 2014-Ohio-3177, syllabus. This was done here. *See* Tr. 41 and Journal Entry of Judgment, Conviction, and Sentence (Feb. 25, 2025) ("Journal Entry"), p. 5-6. Under the circumstances, there is no basis for finding the sentence unsupported by the record.

{¶ 12} The remaining statutory ground for challenging Latham's sentence is that it is contrary to law. The Supreme Court of Ohio has defined this phrase to mean "'in violation of statute or legal regulations at a given time.'" *Jones*, 2020-Ohio-6729, at ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990). In his brief, Latham failed to specify any statutes that the trial court violated, but the State has discussed R.C. 2929.11 and R.C. 2929.12. As a result, we will consider those statutes and how they fit within the context of Latham's argument.

{¶ 13} R.C. 2929.11 requires courts to consider certain purposes and principles of sentencing, R.C. 2929.12(A) addresses factors courts should take into account when

5

complying with these principles and purposes, and R.C. 2929.12(B)-(F) outline "factors for the court to consider relating to matters such as the seriousness of the offender's conduct, the likelihood of the offender's recidivism, and the offender's service in the armed forces of the United States, if any." *Jones* at ¶ 19. In *Jones*, the court stressed that "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *Id*. at ¶ 20, citing *State v. Wilson*, 2011-Ohio-2669, ¶ 31. (Other citation omitted.)

{¶ 14} Trial courts do not even need to state on the record that they have considered these statutes. *E.g., State v. Gibson*, 2017-Ohio-691, ¶ 33 (2d Dist.), citing *State v. Neff*, 2012-Ohio-6047, ¶ 5 (2d. Dist.). "Rather, the law only requires that the record demonstrate that the trial court properly considered the purposes and principles of sentencing and the seriousness and recidivism factors of R.C. 2929.11 and R.C. 2929.12." *State v. Hampton*, 2023-Ohio-1591, ¶ 18 (2d Dist.), citing *State v. Peoples*, 2022-Ohio-953, ¶ 53 (10th Dist.). Here, the trial court specifically indicated during the sentencing hearing and in the judgment entry that it had considered these principles and factors. Tr. at 38 and Journal Entry at p. 3-5. The court did not need to do more.

{¶ 15} As noted, Latham's first complaint is that the trial court erred in relying on the fact that he was on supervision when the crimes were committed. To the contrary, this is a relevant factor in considering whether a defendant is more likely to commit further crimes. *See* R.C. 2929.12(D)(1). *See also Gibson* at ¶ 36 (noting that crime the defendant committed while on community control was an appropriate recidivism factor).

{¶ 16} Latham's second complaint is that the trial court incorrectly relied on the fact that a corrections officer broke his leg in an interaction with Latham. During the sentencing hearing, the State provided the court with narratives from law enforcement officers and a copy of Latham's criminal record, and the court considered them. The court also questioned

Latham about his background and the circumstances of the crimes that were committed. Tr. 21, 25-37.

{¶ 17} At the time of the hearing, Latham was 25 years old; in the prior five years, he had been employed for about one year at Dollar General. When the events in this case occurred, Latham was living in Portsmouth, Ohio, and had been placed on community control by the Scioto County Common Pleas Court following convictions for a felony drug offense and failure to appear. According to Latham, while he was on community control, he traveled to Clark County and used methamphetamine. He then had an interaction with Clark County officials that caused him to be taken to a Springfield hospital. Latham was not sure whether he had an overdose, as he had just been dropped off at the hospital with the option to go in or not. Tr. 22, 25-26, 29, 31.

{¶ 18} At that point, Latham called his grandmother (who lived in Mechanicsburg in Champaign County). She then picked Latham up at the hospital and took him to her house. While there, Latham got in a dispute over some tools with his sister's boyfriend, threw a punch at the boyfriend, and started a physical confrontation. The police were called, and Latham was charged with assault and was taken to Tri-County Regional Jail. When Latham was admitted into the jail on October 11, 2024, officers discovered that he had a live round of .32 ammunition in his pocket. Latham claimed he had found it in the trash in Springfield and that he did not know the ammunition was there. Subsequently, on October 15, 2024, Latham was involved in a confrontation with other inmates. When Latham refused to obey an officer's verbal commands, the officer took him to the ground, which resulted in the officer breaking his own leg. Two other correctional officers then took Latham to a disciplinary room to change into a yellow jumpsuit. At that point, Latham became involved in a confrontation

7

with the two officers, during which one received a black eye, and another's lip was "busted." Tr. 22, 29-36, 43-44.

{¶ 19} During the sentencing hearing, the State clarified that Latham was not in an altercation with the officer who suffered a broken leg. Nonetheless, Latham did state during the hearing that he refused to obey verbal commands and the officer took him to the ground, breaking the officer's leg. Due to these incidents, Latham was indicted in the current case with transporting ammunition into the jail, assault, and the two counts of obstructing justice. Tr. 33, 36, 43-44. He was not charged with assaulting the officer whose leg had been broken.

{¶ 20} The trial court was disturbed by the fact that Latham's offenses occurred while he was on probation and by the fact that his "aggressive and violent conduct at the jail resulted in separate acts of confrontational conduct with local correctional officers." Tr. 38, 39-40. After being informed that Latham did not break the officer's leg, the court stressed that Latham had still engaged in aggressive and violent conduct. Tr. 43-44. And while the assault charge was dismissed pursuant to the plea agreement, the content of the hearing reveals that Latham did injure the two officers in the second confrontation and that he had no remorse about it. He claimed instead that they struck him first. Tr. 34. By the time of the hearing, Latham had also been convicted of assaulting his sister's boyfriend. T. 30-31.

{¶ 21} Trial courts are permitted to consider a defendant's arrests for other crimes and uncharged criminal activity. This is because a sentencing court's function "is to acquire a thorough grasp of the character and history of the defendant before it. The court's consideration ought to encompass negative as well as favorable data. Few things can be so relevant as other criminal activity of the defendant." *State v. Burton*, 52 Ohio St.2d 21, 23 (1977), citing *United States v. Doyle*, 348 F.2d 715, 721 (2d Cir. 1965). In addition, "a sentencing court may consider a criminal charge and supporting facts that are dismissed

under a plea agreement." *State v. Bowser*, 2010-Ohio-951, ¶ 16 (2d Dist.), citing *State v. Blake*, 1999 WL 375576 (2d Dist. June 11, 1999).

{¶ 22} We have continuously held that trial courts may consider a "'broad range of information'" at sentencing, including, among other things, "'hearsay evidence, prior arrests, facts supporting a charge that resulted in an acquittal, and facts related to a charge that was dismissed under a plea agreement.'" *State v. Bodkins*, 2011-Ohio-1274, ¶ 43 (2d Dist.), quoting *Bowser* at ¶ 13 and 15-16. *Accord State v. Kidd*, 2025-Ohio-3167, ¶ 15 (2d Dist.). The trial court was entitled to consider these matters, and no error occurred.

{¶ 23} The court also remarked that because of Latham's conduct, it could have imposed the highest sentencing penalty, which was attached to the third-degree felony. Despite this, the court decided to limit itself to the sentence consistent with the facts of the plea, which it found was "the felony five that under the fact pattern of this case, is the most serious conduct." Tr. 40. As a result, the court limited the sentence to only nine months on the third-degree felony rather than the permitted maximum of 36 months in prison. Tr. 10, 40, 45. The record in this case certainly supports the court's decision.

{¶ 24} Concerning Latham's assertion that the court should have used the agreed-upon sentence, the court was not obliged to do so. The law is settled that "[a] trial court is not bound to accept the State's recommended sentence in a plea agreement." *State v. Downing*, 2020-Ohio-3984, ¶ 34 (2d Dist.), citing *Akron v. Ragsdale*, 61 Ohio App.2d 107, 109 (9th Dist. 1978). A trial court also "does not err in exceeding a sentence recommended in a plea agreement where the defendant has been made aware of the applicable penalties and the possibility of receiving a greater sentence than the State proposed." *State v. Peeples*, 2025-Ohio-677, ¶ 20 (2d Dist.), citing *State v. Melson*, 2023-Ohio-1231, ¶ 11 (2d Dist.). (Other citation omitted.)

9

**{¶ 25}** Here, the court specifically notified Latham of the applicable penalties and that he could receive a greater sentence than the State recommended. In particular, the following exchange occurred during the plea hearing:

THE COURT: Do you understand that the Court is not required to follow the sentencing recommendation of the Prosecutor, your attorney, or yourself?

THE DEFENDANT: Yes, Sir.

THE COURT: Do you understand that the Court is not required to follow the joint sentencing recommendation? Even if everyone agrees, and the Court disagrees, the Court is not required to follow what everyone else agrees to. Do you understand that?

THE DEFENDANT: Yes, Sir.

THE COURT: Do you understand that the Court has the power to impose less than what is recommended or more than what is recommended?

THE DEFENDANT: Yes, Sir.

Tr. 12.

**{¶ 26}** Despite knowing these facts, Latham elected to plead guilty. Accordingly, the trial court's sentence was not contrary to law. In light of the preceding discussion, Latham's complaints lack merit. The sole assignment of error, therefore, is overruled.

### III. Conclusion

**{¶ 27}** Latham's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J., and HUFFMAN, J., concur.

10