[Cite as *State v. Freiburger*, 2026-Ohio-2021.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                    Court of Appeals No.  {26}F-25-006

　　　Appellee                                Trial Court No.  25 CR 28

v.

Robert James Freiburger II              **<u>DECISION AND JUDGMENT</u>**

　　　Appellant                              Decided:  May 29, 2026

* * * * *

T. Luke Jones, Fulton County Prosecuting Attorney, and
Allma-Tadema Miller, Assistant Prosecuting Attorney, for appellee.

Coral M. Watt, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant Robert James Freiburger, II, appeals the June 30, 2025 judgment of the Fulton County Court of Common Pleas, convicting him of attempted engaging in a pattern of corrupt activity, attempted grand theft of a motor vehicle, burglary, vandalism, and having weapons while under disability, and sentencing him to an aggregate prison term of a minimum of 13 years and a maximum of 16 and one-half years.  For the following reasons, we affirm the trial court judgment.

## I.  Background

{¶ 2} Robert Freiburger, II was indicted on 19 counts in connection with break-ins that occurred at a car dealership on November 1 and 27, 2024.  Freiburger and the State reached an agreement pursuant to which Freiburger entered pleas of guilty to amended Count 1, attempt to engage in a pattern of corrupt activity, a violation of R.C. 2923.02 and 2923.32(A)(1), a second-degree felony; Count 6, attempted grand theft of a motor vehicle, a violation of R.C. 2923.02 and 2913.02(A)(1), a fifth-degree felony; Count 9, burglary, a violation of R.C. 2911.12(A)(1), a third-degree felony; Count 14, vandalism, a violation of R.C. 2909.05(B)(1)(a), a fifth-degree felony; and Count 16, having weapons while under disability, a violation of R.C. 2923.13(A)(4), a third-degree felony. All remaining counts were dismissed.

{¶ 3} The trial court accepted Freiburger's pleas, made a finding of guilty, referred the matter for a presentence investigation, and scheduled a sentencing hearing.  The trial court sentenced Freiburger to a minimum prison term of seven years and a maximum prison term of ten and one-half years on Count 1; 11 months on Count 6; 36 months on Count 9; 11 months on Count 14; and 36 months on Count 16.  It ordered that the sentences imposed for Counts 1, 9, and 16 be served consecutively with each other and concurrently with the sentences imposed for Counts 6 and 14, for a total prison term of a minimum of 13 years and a maximum of 16 and one-half years.

{¶ 4} Freiburger appealed.  He assigns the following errors for our review:

2.

Assignment of Error I: The trial court violated Mr. Freiburger's rights to due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution by considering inflammatory and unproven allegations when determining his sentence.

Assignment of Error II: The Trial Court violated Mr. Freiburger's rights under Crim.R. 32(A)(1) and the Sixth and Fourteenth Amendments by denying defense counsel's request to confer with him immediately before allocution, depriving him of effective assistance of counsel and a meaningful opportunity to speak.

Assignment of Error III: The Trial Court erred by imposing consecutive prison terms without fully complying with R.C. 2929.14(C)(4), and by entering a judgment of sentence that does not accurately reflect all of the findings made at the sentencing hearing.

Assignment of Error IV: The trial court erred by failing to merge allied offenses of similar import pursuant to R.C. 2941.25 before imposing separate sentences for offenses committed as part of the same conduct.

Assignment of Error V: Trial counsel rendered ineffective assistance of counsel in violation of the Ohio Constitution and the Sixth Amendment to the U.S. Constitution.

## II. Law and Analysis

{¶ 5} In his first assignment of error, Freiburger claims that the trial court violated his right to due process by considering information contained in a PowerPoint presented by the State at sentencing and by considering uncharged offenses or dismissed charges described in his PSI. In his second assignment of error, Freiburger argues that the trial court violated his right to allocution and right to counsel when it refused his request to speak with counsel immediately before allocution. In his third assignment of error, Freiburger challenges the trial court's consecutive-sentencing findings. In his fourth

3.

assignment of error, Freiburger contends that the trial court failed to merge allied offenses of similar import. And in his fifth assignment of error, Freiburger maintains that he received ineffective assistance of counsel.

{¶ 6} We address each of Freiburger's assignments in turn.

## A. Matters Considered at Sentencing

{¶ 7} In his first assignment of error, Freiburger argues that he was deprived of his right to a fundamentally fair sentencing proceeding because the trial court considered inflammatory, unproven allegations in imposing his sentence. More specifically, Freiburger complains that the trial court permitted the State to present a PowerPoint asserting that Freiburger and others "almost certainly worked together to steal vehicles" and that Freiburger was "very likely . . . involved"—and was "very likely [a] leader" of— a criminal organization known as "the Strike Gang," whose primary focus was "very likely car theft and weapon possession." He also complains that the PSI contained assertions that were not supported by authenticated evidence, testimony, or convictions, yet were presented to the court as fact. He claims that the court had a duty to either verify the accuracy of the information contained in the PowerPoint and PSI or refrain from relying on this information.

{¶ 8} Freiburger acknowledges that the Ohio Rules of Evidence do not apply at a sentencing hearing, and he acknowledges that his guilty plea waived the right to confront witnesses at trial, but he insists that his plea did not permit the State to inject "unverified, inflammatory allegations at sentencing without meaningful safeguards." Freiburger

4.

argues that the PowerPoint and PSI summarized uncharged incidents and relied heavily on unsworn statements from co-defendants whose credibility was untested. He suggests that a PSI is intended to be neutral and objective and claims that the PSI here reinforced materially untrue assumptions, resulting in a sentence premised on speculation instead of verified facts. He maintains that he was not adequately able to challenge the reliability of the allegations or mitigate their impact through defense counsel's argument and his own allocution. Freiburger contends that the trial court's consideration of the information contained in the PowerPoint and PSI rendered the proceeding fundamentally unfair, requiring remand for a new hearing before a different judge.

{¶ 9} The State responds that the court had broad discretion to consider "information relevant to the imposition of sentence," including the nature and circumstances of the offenses, the history and background of the offender, any victim impact statements, the risk of recidivism, the sentencing factors outlined in R.C. 2929.12, uncharged crimes, charges dismissed under a plea agreement, and any other reliable evidence contained in the record. The State acknowledges that a court may not consider assumptions about a defendant's criminal record that are materially untrue, but it maintains that the court did not consider any materially-untrue assumptions about Freiburger's criminal record. The State insists that the PSI and PowerPoint were reviewed by defense counsel before the sentencing hearing, were based on a comprehensive investigation, and contained materials that were provided to the defense during discovery. The State points out that the trial court remarked that the PowerPoint

5.

was no more prejudicial than the PSI, and Freiburger did not report that there were any inaccuracies contained in the PSI.

{¶ 10} Both the United States Supreme Court and the Ohio Supreme Court have recognized that a sentence may violate due process "if the sentencing proceedings are fundamentally unfair." *State v. Arnett*, 88 Ohio St.3d 208, 217 (2000), citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Related to this, Ohio courts have recognized that an "[a]ppellate court may vacate sentences as violative of due process when the record reveals that the trial court imposed or enhanced the offender's sentence because of improper considerations." *State v. Mayle,* 2023-Ohio-684, ¶ 16 (5th Dist.). But it is well-recognized that in fashioning an appropriate sentence, a court may consider uncharged conduct and charges that were dismissed as part of a plea agreement. *State v. Lanning,* 2020-Ohio-2863, ¶ 16-17 (6th Dist.). In fact, "trial courts may consider a broad range of information at sentencing, including, among other things, hearsay evidence, prior arrests, facts supporting a charge that resulted in an acquittal, and facts related to a charge that was dismissed under a plea agreement." (Cleaned up.) *State v. Latham,* 2026-Ohio-6, ¶ 22 (2d Dist.).

{¶ 11} Here, the PowerPoint and PSI contained the type of information that courts have expressly concluded may properly be considered by the sentencing court. Freiburger's due-process rights were not violated and the trial court did not err in considering this information.

6.

{¶ 12} The right to due process may also be violated where a sentence is based on information that is "'extensively and materially false,'" which the defendant "'had no opportunity to correct.'" *State v. Hundley,* 2020-Ohio-3775, ¶ 113, quoting *Arnett* at 218, quoting *Townsend* at 741. But R.C. 2951.03(B)(2) contains a mechanism for challenging perceived inaccuracies contained in a PSI. Under that statute, the defendant and defense counsel may comment on the PSI, and the court, "in its discretion, may permit the defendant and the defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report." R.C. 2951.03(B)(2) Under R.C. 2951.03(B)(5), "[i]f the comments of the defendant or the defendant's counsel, the testimony they introduce, or any of the other information they introduce alleges any factual inaccuracy in the presentence investigation report or the summary of the report, the court shall do either of the following with respect to each alleged factual inaccuracy:"

(a) Make a finding as to the allegation;

(b) Make a determination that no finding is necessary with respect to the allegation, because the factual matter will not be taken into account in the sentencing of the defendant.

{¶ 13} Here, Freiburger's attorney objected to the use of the PowerPoint and complained that the allegations in the PSI had not been proven and, therefore, should not be considered in sentencing. He highlighted equivocal statements in the PowerPoint indicating that Freiburger had "very likely" or "almost certainly" participated in criminal conduct, but claimed that the State did not adequately show his involvement. He argued:

7.

"[W]hy did we make any sort of . . . agreement about what was provable and what was not if the Court considers all of what was presented as part of discovery as evidence or as information used to sentence my client? It shouldn't be that way."

{¶ 14} But while defense counsel objected to the court's consideration of the unproven information contained in the PowerPoint and PSI, defense counsel did not contest the accuracy of any particular fact contained in those documents. In fact, when asked if he had reviewed the PSI, defense counsel responded: "I absolutely have in its entirety, Judge. And it is substantially accurate."

{¶ 15} Likewise, Freiburger denied knowing the extent of the theft ring, attempted to minimize his involvement, and claimed to have been physically present for only one of the thefts. However, he did not challenge the accuracy of any particular fact contained in the PowerPoint or PSI. Because the information contained in the PSI and PowerPoint was of a type that the trial court could properly consider in fashioning a sentence, and because Freiburger did not utilize the procedure set forth in R.C. 2951.03(B)(2) and (5) to challenge the contents of the PSI, we find Freiburger's first assignment of error not well-taken.

**B. Allocution**

{¶ 16} At sentencing, the trial court asked Freiburger if he wished to make a statement. Defense counsel asked if Freiburger could "have one moment." The trial court said no, and Freiburger provided a statement, then responded to questions posed by the court. In his second assignment of error, Freiburger argues that by denying his

8.

request for "one moment," the trial court violated his right to counsel and his right to allocution. Freiburger contends that it was critical that he be able to consult counsel given that the State had just presented an inflammatory PowerPoint presentation. He argues that prejudice is evident from the fact that he stumbled through his statement and provided hesitant and incomplete remarks, ultimately leading the court to conclude that Freiburger was not genuinely remorseful.

{¶ 17} The State responds that Freiburger was represented by competent counsel, the trial court directly addressed Freiburger at sentencing, and Freiburger was permitted a meaningful opportunity to provide mitigating information. The State disagrees that counsel's request that Freiburger be given "one moment" was a request to confer with his client; it interprets the request as seeking additional time for Freiburger to organize his thoughts. To that end, the State points out that Freiburger knew that he would have the opportunity to speak at sentencing and should not have been surprised by the information the State presented given that (1) the State provided the defense with its sentencing memorandum and a copy of the PowerPoint before the sentencing hearing, and (2) Freiburger participated in the PSI. The State urges that the trial court's skepticism about Freiburger's remorse stemmed from his attempts to minimize his role in the crimes, blame others, and avoid acknowledging his history of narcotics abuse.

{¶ 18} Under Crim.R. 32(A)(1), "[a]t the time of imposing sentence, the court shall . . . address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." The

9.

Ohio Supreme Court has held that trial courts must "painstakingly" adhere to Crim.R. 32(A)(1). *State v. Roberts,* 2013-Ohio-4580, ¶ 66.

{¶ 19} Here, the trial court gave Freiburger the opportunity to make a statement on his own behalf at sentencing. Freiburger availed himself of this opportunity. The trial court adhered to Crim.R. 32(A)(1). But Freiburger also complains that his right to counsel was violated because just before Freiburger began his statement, the trial court said "no" when defense counsel asked if Freiburger could "have one moment."

{¶ 20} The Sixth Amendment guarantees a criminal defendant the right to counsel. The right to counsel applies "to critical stages of criminal proceedings." *State v. Schleiger,* 2014-Ohio-3970, ¶ 13, citing *United States v. Wade,* 388 U.S. 218, 224 (1967). It is well-recognized that "sentencing is a critical stage of the proceedings." *Id.* at ¶ 14, citing *Gardner v. Florida,* 430 U.S. 349, 358 (1977).

{¶ 21} Implicit in the right to counsel is the right to confer privately with one's attorney. *State v. Milligan*, 40 Ohio St.3d 341, 342 (1988). According to Freiburger, the trial court refused to allow defense counsel "a brief opportunity to confer with Mr. Freiburger." He claims that this request came "immediately after the State's incriminating slideshow and before the court's probing questions."

{¶ 22} First, we agree with the State that counsel did not request an opportunity to confer with Freiburger—he asked the court to give Freiburger a minute. The request was made after defense counsel made a lengthy statement on Freiburger's behalf—not immediately after the State's PowerPoint presentation. And the State's PowerPoint

10.

presentation was provided to defense counsel *before* the sentencing hearing, along with a copy of the presentation.

{¶ 23} Second, Freiburger's counsel indicated that he and his client were ready to proceed to sentencing, and Freiburger has cited no authority requiring the trial court to interrupt proceedings, either for the purpose of allowing a defendant to confer with counsel or to gather his thoughts before allocution. This was not a situation where Freiburger was given no opportunity to consult with defense counsel to prepare for sentencing. *Compare State v. Torres,* 2022-Ohio-889, ¶ 48 (11th Dist.) (finding error where defendant was not given an opportunity to consult with his attorney before his revocation and sentencing hearing). The trial court simply declined to interrupt the sentencing hearing to give him more time.

{¶ 24} Under the circumstances of this case, we find that neither Freiburger's right to allocution nor his right to counsel was violated when the trial court refused to give him "one moment" between defense counsel's statement to the court and Freiburger's allocution. We find Freiburger's second assignment of error not well-taken.

### C. Consecutive Sentences

{¶ 25} In his third assignment of error, Freiburger argues that the trial court erred when it imposed consecutive sentences. Appellate courts review a challenge to a felony sentence under R.C. 2953.08(G)(2). R.C. 2953.08(G)(2) provides that the court may increase, reduce, or otherwise modify a sentence or may vacate the sentence and remand

11.

the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

{¶ 26} Freiburger's challenge here is to the imposition of consecutive sentences under R.C. 2929.14(C)(4). Under that section, where a trial court imposes multiple prison terms for convictions of multiple offenses, it may require the offender to serve the prison terms consecutively if it finds that "consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, . . ." and if it also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

12.

{¶ 27} In other words, this statute requires the trial court to make three statutory findings before imposing consecutive sentences. *State v. Beasley*, 2018-Ohio-493, ¶ 252; *State v. Bonnell*, 2014-Ohio-3177, ¶ 26. It must find that (1) consecutive sentences are necessary to protect the public or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Beasley* at ¶ 252. The trial court must make the required findings at the sentencing hearing and incorporate those findings into the sentencing entry. *State v. Jones,* 2024-Ohio-1083, ¶ 11. A word-for-word recitation of the language of the statute is not required, nor must the trial court state on the record the reasons for its findings. *Id.*

{¶ 28} Here, the trial court made the required findings both at the sentencing hearing and in its judgment. It found (1) "a consecutive sentence is necessary to protect the public from future crime and to punish the offender," (2) "consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and the danger he poses to the public," and (3) "at least two of the multiple offenses were committed as part of one or more courses of conduct and that (sic) the harm caused by two or more of the multiple offenses committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflect (sic) the seriousness of the Defendant's conduct"—i.e., R.C. 2929.14(C)(4)(b) applies.

13.

{¶ 29} Freiburger insists that "the record does not support a finding that consecutive sentences were necessary to protect the public or to punish Mr. Freiburger" because he had no prior criminal convictions, maintained long-term employment, enjoyed family and community support, and was determined to be in the low-to-moderate risk category for recidivism. He argues that the court's proportionality findings are not supported by the record because his sentence far exceeds the State's eight-year recommendation and is nearly double the sentences imposed for his equally-culpable co-defendants. Freiburger further claims that "the record fails to support any of the additional findings required by R.C. 2929.14(C)(4)" because neither (a) nor (c) apply, and as to (b), there were no victim impact statements, no individualized harm assessment, and no evidence of extraordinary loss or community harm beyond the ordinary elements of the offenses.

{¶ 30} The State responds that the trial court made all the required findings before imposing consecutive sentences, and it insists that the record supports the trial court's findings. It highlights information contained in the record demonstrating that Freiburger engaged in organized criminal activity, he admitted to being a leader of the organization, his house was used as the primary location for members to meet and dismantle vehicles, he worked with youthful offenders—including his son—to carry out the crimes, he purchased firearms and provided them to individuals under disability, he lacked remorse, he has a pattern of unacknowledged substance abuse, and he caused economic and psychological harm to his victims.

14.

**{¶ 31}** An appellate court may modify or vacate the imposition of consecutive sentences, but only when it concludes that the record clearly and convincingly does not support the trial court's findings. *State v. Glover,* 2024-Ohio-5195, ¶ 2, 43, citing R.C. 2953.08(G)(2). It may not consider the defendant's aggregate sentence, nor may it "simply substitute its view of an appropriate sentence for that of the trial court." *Id.* at ¶ 43-44. "Rather, the appellate court must limit its review to the trial court's R.C. 2929.14(C)(4) consecutive-sentencing findings." *Id.* at ¶ 43. In doing so, "[i]t must examine the evidence in the record that supports the trial court's findings." *Id.* at ¶ 45.

**{¶ 32}** In *Glover*—a non-binding plurality decision, but one that this court has applied, *see State v. Hammons,* 2024-Ohio-6128, ¶ 22-24 (6th Dist.), *appeal allowed,* 2025-Ohio-1483—the Ohio Supreme Court interpreted the "clear-and-convincing" standard set forth in R.C. 2953.08(G)(2). It explained that R.C. 2953.08(G)(2) "does not require that the appellate court conclude that the record supports the trial court's findings before it may affirm the sentence." *Id.* at ¶ 46. Rather, it permits modification or vacation of consecutive sentences "only when the appellate court 'clearly and convincingly finds' that the evidence does *not* support the trial court's findings." (Emphasis in original.) *Id.,* quoting R.C. 2953.08(G)(2)(a). Deference must be given to the trial court's consecutive-sentence findings. *Id.* An appellate court may not simply substitute its judgment for that of the trial court. *Id.*

{¶ 33} Here, for the reasons pointed out by the State, we cannot say that the record clearly and convincingly does not support the trial court's findings that consecutive sentences were necessary to protect the public or to punish Freiburger and that R.C. 2929.14(C)(4)(b) applies. The questions posed to Freiburger during his allocution make clear that the court was particularly bothered that Freiburger worked with teenagers to commit the offenses. It was also clear that the trial court did not believe Freiburger when he attempted to downplay his knowledge of and participation in the criminal activity. As for Freiburger's claim that the court's proportionality findings are not supported by the record because his sentence far exceeds the State's eight-year recommendation and is nearly double the sentences imposed for his equally-culpable codefendants, the *Glover* Court pointed out that R.C. 2953.08(G)(2) does not permit an appellate court to consider the State's sentencing request when reviewing the imposition of consecutive sentences, nor does it permit a comparative analysis of sentences imposed in other cases. *Id.* at ¶ 57, 59.

{¶ 34} Because we cannot say that the record clearly and convincingly does not support the trial court's consecutive-sentence findings, we find Freiburger's third assignment of error not well-taken.

### D. Allied Offenses

{¶ 35} In his fourth assignment of error, Freiburger argues that his convictions of burglary, attempted grand theft of a motor vehicle, and vandalism should have merged for purposes of sentencing. He claims that the offenses did not involve separate victims,

16.

locations, or criminal objectives; rather, the burglary was the entry necessary to attempt the theft and the vandalism was incidental damage caused in the course of the attempt.

{¶ 36} The State responds that the burglary and attempted grand theft involved separate conduct, had a different animus, and caused differing harm. It maintains that only after breaking into the auto dealership was it determined which items would be stolen, and here, in addition to the attempted grand theft of a motor vehicle, other items were taken, including a cash drawer, gloves, and key fobs. The State denies that the vandalism was merely incidental to the burglary. It emphasizes that a sliding window was broken in an unsuccessful attempt to gain access to a parts room, and the main phone at the reception desk was smashed.

{¶ 37} The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, applicable to the state through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." *State v. Ruff*, 2015-Ohio-995, ¶ 10. The Double Jeopardy Clause protects against a number of abuses. *Id.* Pertinent to this case is the protection against multiple punishments for the same offense. *Id.* To that end, the General Assembly enacted R.C. 2941.25, which directs when multiple punishments may be imposed. *Id.* It prohibits multiple convictions for allied offenses of similar import arising out of the same conduct:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 38} In *Ruff*, the Ohio Supreme Court examined in detail the analysis that must be performed in determining whether offenses are allied offenses of similar import under R.C. 2941.25. It identified three questions that must be asked: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *Id.* at ¶ 31. If the answer to any of these questions is "yes," the defendant may be convicted and sentenced for multiple offenses. *Id.* at ¶ 25, 30. The court explained that offenses are of *dissimilar* import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. It emphasized that the analysis must focus on the defendant's conduct, rather than simply compare the elements of two offenses. *Id.* at ¶ 30.

{¶ 39} The defendant bears the burden of establishing that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 2013-Ohio-4982, ¶ 18, citing *State v. Mughni*, 33 Ohio St.3d 65, 67 (1987). An appellate court reviews de novo whether offenses should be merged as allied offenses under R.C. 2941.25. *State v. Bailey,* 2022-Ohio-4407, ¶ 5, citing *State v. Williams*, 2012-Ohio-5699, ¶ 1. "Although determining whether R.C. 2941.25 has been properly applied is a legal question, it necessarily turns on an analysis of the facts . . . ." *Id.* at ¶ 11. This "can lead to exceedingly fine

18.

distinctions." *Id*. As such, an allied offenses analysis "may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases." *Ruff* at ¶ 32. Different results are permissible because "the statute instructs courts to examine a defendant's conduct—an inherently subjective determination." *Id.,* quoting *State v. Johnson,* 2010-Ohio-6314, ¶ 52 (plurality opinion per Brown, C.J.).

**{¶ 40}** Because it is undisputed that Freiburger failed to raise the issue of merger at trial, we review the issue for plain error. *Bailey* at ¶ 7. Plain error is error that affects substantial rights. Crim.R. 52(B). To demonstrate plain error under Crim.R. 52(B), the party asserting error has the burden of demonstrating "that an error occurred, that the error was obvious, and that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial." *State v. Echols,* 2024-Ohio-5088, ¶ 50, citing *State v. Knuff,* 2024-Ohio-902, ¶ 117. We will reverse for plain error "only in 'exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Bond,* 2022-Ohio-4150, ¶ 18, quoting *State v. Long*, 53 Ohio St.2d 91, (1978), paragraph three of the syllabus.

**{¶ 41}** Although not pointed out by the State, the indictment and the transcript of the plea hearing make clear that the vandalism occurred on November 1, 2024, while the burglary and attempted grand theft of a motor vehicle occurred on November 27, 2024. Regardless of Freiburger's contention that his conduct occurred only on November 27, 2024, his plea of guilty to the vandalism charge establishes otherwise. Accordingly, because the vandalism occurred on a different day than the burglary and attempted grand

19.

theft of a motor vehicle, Freiburger's vandalism conviction cannot merge with the other two convictions.

{¶ 42} As to the burglary and attempted-grand-theft-of-a-motor-vehicle convictions, R.C. 2911.12(A)(3) provides that "[n]o person, by force, stealth, or deception, shall . . . [t]respass in an occupied structure . . . with purpose to commit in the structure . . . any criminal offense." The indictment specifies that the criminal offense that Freiburger intended to commit was theft. R.C. 2913.02(A)(1) provides that "[n]o person, with purpose to deprive the owner of property . . . shall knowingly obtain or exert control over . . . the property . . . [w]ithout the consent of the owner or person authorized to give consent." Because the motor-vehicle theft was unsuccessful, Freiburger was charged under the attempt statute, R.C. 2923.02(A).

{¶ 43} Freiburger argues that the offenses did not involve separate victims, locations, or criminal objectives, and the burglary was merely the entry necessary to attempt the theft. But Freiburger fails to address the separateness of the harm caused by the two offenses, and he ignores the fact that the offense of burglary was complete once the structure was entered by force with the intent to commit a criminal offense therein. These issues implicate the first and second questions set forth in *Ruff*, 2015-Ohio-995, ¶ 31: (1) whether the offenses are dissimilar in import or significance, and (2) whether they were committed separately.

20.

{¶ 44} The Ohio Supreme Court explained in *Ruff* that offenses are of *dissimilar* import if the harm caused by each offense is separate and identifiable. *Id.* at ¶ 23. Courts have found that the intrusion caused by the trespass and the property damage caused by the force required to enter the structure are harms separate from the harm caused by the theft of property. In *State v. Hymer,* 2025-Ohio-1691, ¶ 27 (12th Dist.), for instance, the court recognized that the burglary caused two harms: (1) "the harm of 'intrusion into the sanctity of the home,'" and (2) the harm of the damage to the victim's home, which, in that case was a broken window screen. *See also State v. Wisor,* 2026-Ohio-248, ¶ 21 (4th Dist.) ("In sum, the victims' sense of privacy had been invaded and compromised in addition to the structure exhibiting physical damage which constituted the harm resulting from the burglary offense, and the victim suffered economic loss as a result of the theft offense.")

{¶ 45} In *State v. Ramunas,* 2022-Ohio-4199, the Ohio Supreme Court dismissed as improvidently certified an appeal that sought to clarify *Ruff.* However, in a dissenting opinion, Justice Fischer undertook an allied-offenses analysis. He observed that burglary and theft cause different harms. He explained that in a burglary, the "harm suffered is the violation and loss of the victims' sense of trust and security in their personal living spaces." In a theft, the "harm inflicted on the victims result[s] from the loss of their valuables[.]" *Id.* at ¶ 25-26 (Fischer, J., dissenting). Similarly, in *State v. Gillman,* 2015-Ohio-4421, ¶ 23 (4th Dist.), the court recognized two harms: (1) the harm caused by having been "'invaded and compromised,'" and (2) the economic damage caused from

21.

the theft of valuables. And in *State v. Pugh,* 2022-Ohio-3038, ¶ 25 (8th Dist.), *aff'd sub nom. In re Cases Held for State v. Hacker & State v. Simmons,* 2023-Ohio-3863, the court recognized that burglary and felonious assault caused separate harms: (1) the harm caused by the invasion of the home, and (2) the harm the victim experienced from being shot at.

{¶ 46} Here, the PSI indicates that a window was broken.[1] And while the structure at issue here was a business and not a home, the dealership—and arguably its employees—suffered a breach of security from the intrusion of the trespass into their place of business. These harms were separate from the harm caused by the attempted theft of a motor vehicle.

{¶ 47} As for whether the offenses were committed separately, courts recognize that to commit burglary, one need not actually commit a criminal offense inside the structure. *State v. Rice,* 2020-Ohio-4404, ¶ 22 (2d Dist.). Rather, once inside, the defendant still has "the choice to leave without committing a second offense." *State v. Penn,* 2020-Ohio-3158, ¶ 54 (9th Dist.). The burglary itself is complete once the intruder enters the structure by force with the intent to commit a criminal offense therein. *State v. Jackson,* 2016-Ohio-5488, ¶ 129 ("The burglary was complete when Jackson entered Fingerhut's residence with the intent to commit murder, theft, or kidnapping."); *Rice* at ¶

---

[1] In addition to the property damage, two key fobs were found on one of Freiburger's co-defendants, and multiple key fobs were found in the front of Freiburger's truck. Police suspected that the target vehicles were a Dodge Durango and a Dodge Hellcat.

22.

22; *Penn* at ¶ 54 ("The general rule is that the crime of burglary is complete upon an offender's forced entry into an occupied structure."); *State v. Chafin,* 2020-Ohio-3983, ¶ 37 (2d Dist.); *State v. Evett,* 2015-Ohio-2722, ¶ 39 (9th Dist.) ("[T]he offenses were separately committed. At the point in time when Mr. Evett entered the apartment without permission with the intent to commit a criminal offense, Mr. Evett had committed the crime of burglary. It was only later when Mr. Evett took Ms. Schwabe's purse that he committed the crime of theft.").

{¶ 48} Here, the crime of burglary was complete when the structure was entered forcibly with the intent to commit a theft offense. The attempted theft of a motor vehicle was committed separately when the key fobs to numerous vehicles were taken.[2]

{¶ 49} Because we conclude that the burglary of the auto dealership and the attempted theft of a motor vehicle were of dissimilar import and were committed separately, the trial court did not err in failing to merge the convictions. We find Freiburger's fourth assignment of error not well-taken.

---

[2] The State argues that the thieves decided what to steal only after entering the dealership. It claims that this is "supported by the fact [that] once inside the dealership, other items such as a cash drawer, gloves, and multiple key FOBS were also stolen." It appears that the State is confusing the November 1, and November 27, 2024 break-ins. While multiple key fobs were taken during the November 27, 2024 break-in, the record indicates that the cash drawer and other items were taken during the November 1, 2024 break-in. Freiburger's burglary conviction was premised on the November 27, 2024 incident.

23.

### E. Ineffective Assistance of Counsel

{¶ 50} In his fifth assignment of error, Freiburger claims that counsel was ineffective for failing to argue merger, failing to object to consecutive sentences, and failing to renew his request to speak with Freiburger before allocution. In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. *State v. Shuttlesworth*, 104 Ohio App.3d 281, 287 (7th Dist. 1995). To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151 (2002).

{¶ 51} Given our resolution of Freiburger's second, third, and fourth assignments of error, we find that Freiburger cannot establish either prong of a claim of ineffective assistance of counsel. We find his fifth assignment of error not well-taken.

### III. Conclusion

{¶ 52} The information contained in the PSI and PowerPoint was of a type that the trial court could properly consider in fashioning a sentence. Moreover, Freiburger did not utilize the procedure set forth in R.C. 2951.03(B)(2) and (5) to challenge the accuracy

24.

of the contents of the PSI. Freiburger's due-process rights were not violated. We find his first assignment of error not well-taken.

{¶ 53} Neither Freiburger's right to allocution nor his right to counsel was violated when the trial court refused to give him "one moment" between defense counsel's statement to the court and Freiburger's allocution. The court was not required to interrupt the proceedings to accommodate Freiburger's request. We find Freiburger's second assignment of error not well-taken.

{¶ 54} We cannot say that the record clearly and convincingly does not support the trial court's consecutive-sentence findings. We find Freibuger's third assignment of error not well-taken.

{¶ 55} The burglary of the auto dealership and the attempted theft of a motor vehicle were of dissimilar import and were committed separately. The harm caused by the burglary included both the intrusion resulting from the trespass and the property damage caused by the forced entry into the building. What's more, that crime was complete before the attempted theft occurred. The trial court did not err in failing to merge the convictions. We find Freiburger's fourth assignment of error not well-taken.

{¶ 56} Given our resolution of Freiburger's second, third, and fourth assignments of error, we find that Freiburger cannot establish either prong of a claim of ineffective assistance of counsel. We find his fifth assignment of error not well-taken.

25.

**{¶ 57}** We affirm the June 30, 2025 judgment of the Fulton County Court of Common Pleas. Freiburger is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Christine E. Mayle, J.
_____
JUDGE

Myron C. Duhart, J.

Charles E. Sulek, J.
_____
CONCUR.
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.